DONTRELL GORDON and
TRAVIS WALTON,

        Plaintiff,

      v.                         Case No. 24-cv-1469-bhl

AMY VAUGHN,
TRACY LEWANDOWSKI,
ELIZABETH SHALLOW,
DENCON DICK, and
WAUKESHA COUNTY JAIL,

        Defendants.

## SCREENING ORDER

Plaintiff Dontrell Gordon and Travis Walton, who are currently incarcerated at the Waukesha County Jail and representing themselves, filed a complaint under 42 U.S.C. §1983, alleging that their civil rights were violated. This matter comes before the Court on Plaintiffs' motions for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTIONS TO PROCEED WITHOUT PREPAYING THE FILING FEE

Gordon and Walton both requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Plaintiffs filed certified copies of their prison trust account statements for the six-month period immediately preceding the filing of the complaint. Gordon was assessed and paid an initial partial filing fee of $146.41, so his motion to proceed without prepaying the filing fee will be granted. Walton was assessed and ordered to pay an initial partial filing fee of $12.10

by January 27, 2025.  Walton did not pay the fee by the deadline, so his motion will be denied, and his claims will be dismissed based on his failure to pay the filing fee.

SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. §1915A(b).  In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted.  To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2).  It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to Gordon,[1] from June 21, 2024 until November 7, 2024, he contacted "each Defendant" through the inmate complaint form on the Waukesha County Jail tablet to ask about religious materials and services for Muslims. He further asserts that these materials and services are not offered at the jail. Gordon states that he spoke to Captain Elizabeth Shallow twice and requested Friday Jumu'ah worship services. Shallow allegedly informed Gordon that, if he could "find someone to come in that would be great," but she cautioned him that under jail policy "no one can work [or] enter the jail that has family or friends in custody in the jail." Dkt. No. 1 at 3.

Gordon also asserts that he submitted three inmate complaints to the Deputy Jail Administrator, but she routed two of them to staff with no authority to address them, so he received no response. He also asserts that he filed a grievance, which was directed to Jail Administrator Amy Vaughn, but this too has gone unanswered. According to Gordon, the jail offers services for Christian and Catholic inmates but refuses to provide services and books for Muslim inmates.

## THE COURT'S ANALYSIS

Gordon claims that his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA) are being violated by jail staff's refusal to host Friday Jumu'ah worship services and provide religious materials for Muslims. The Free Exercise Clause of the First Amendment prohibits the government from imposing a "substantial burden" on a "central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013). When

---

[1] Although Gordon and Walton are both identified as Plaintiffs in the caption of the complaint, only Gordon originally signed the complaint. Walton filed a signed copy of the complaint about a month later. The allegations in the complaint, which appears to have been written by Gordon, refer only to a single plaintiff. None of the allegations appear to involve Walton.

3

"a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *O'Lone v. Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). This "reasonableness test" is "less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights," in recognition that "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives." *O'Lone*, 482 U.S. at 349-350 (citations omitted).

RLUIPA offers broader protections than the First Amendment. *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). RLUIPA prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution," unless "that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §2000cc–1(a). RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," § 2000cc–5(7)(A), but "a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 574 U.S. 352 (2015) (citing *Burwell v. Hobby Lobby*, 573 U.S. 682, 717, n. 28 (2014)).

The complaint does not clearly explain what the jail's policy is regarding Muslim worship services and materials. Gordon alleges that the jail hosts services for Christians generally, and Catholics in particular, but he does not clarify if those services are led by volunteers, jail staff, or other inmates. The complaint also suggests that the jail would allow a volunteer to lead Muslim services if one could be located; the only restriction being that the volunteer cannot be a friend of or related to a current inmate. Whatever the specifics of the policy may be, Gordon's allegation that his requests for Muslim worship services have been denied is sufficient at this stage for him to proceed on claims under the First Amendment and RLUIPA.

4

Although Gordon states a First Amendment claim, he does not do so against all the individuals he sues. Under §1983, an official is liable for damages only if he or she was personally responsible for the deprivation of a constitutional right, meaning that the deprivation occurred at the defendant's behest or with his or her knowledge and consent. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). Further, the Seventh Circuit has explained that "[p]ublic officials do not have a free-floating obligation to put things to rights, disregarding rules . . . along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). With these principles in mind, the Court will allow Gordon to proceed on First Amendment and RLUIPA claims against Jail Administrator Amy Vaughn and Chaplain Dencon Dick, as it is reasonable to infer that they have authority to establish and revise jail policy regarding religious services. Gordon does not, however, state a claim against Deputy Jail Administrator Tracy Lewandowski and Captain Shallow as nothing in the complaint suggests they have the authority to disregard or revise jail policy.

Gordon also does not state a claim against the Waukesha County Jail because the jail is not a "person" subject to suit under §1983. State law determines an entity's capacity to be sued. *Webb v. Franklin Cty. Jail*, Case No. 160-cv-01284, 2017 WL 914736 at *2 (S.D. Ill. Mar. 8, 2017). Under Wisconsin law, a jail "is not a legal entity separable from the county government which it serves," and is therefore not subject to suit under §1983. *See Whiting v. Marathon Cty. Sherriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004).

Nor does Gordon state a claim based on allegations that the jail would not provide religious materials to Muslims. The complaint contains no factual allegations of what materials Gordon

requested, whether he demanded the jail purchase materials for him or only allow delivery of materials to him, or on what basis he was denied the materials. The complaint therefore fails to satisfy Fed. R. Civ. P. 8 with regard to such a claim because it fails to give notice to Defendants of the factual basis of the claim he seeks to pursue.

**IT IS THEREFORE ORDERED** that Gordon's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Walton's motion for leave to proceed *in forma pauperis* (Dkt. No. 12) is **DENIED**, and his claims are **DISMISSED** without prejudice based on his failure to pay the filing fee. The clerk's office is directed to terminate Walton from this action.

**IT IS FURTHER ORDERED** that Gordon fails to state a claim against Tracy Lewandowski, Elizabeth Shallow, and the Waukesha County Jail so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon Amy Vaughn and Dencon Dick pursuant to Federal Rule of Civil Procedure 4. Gordon is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3). Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that Vaughn and Dick shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Gordon and Walton are located.

**IT IS FURTHER ORDERED** that the agency having custody of Gordon shall collect from his institution trust account the $203.59 balance of the filing fee by collecting monthly payments from Gordon's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Gordon is transferred to another institution, the transferring institution shall forward a copy of this Order along with Gordon's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the agency having custody of Walton shall collect from his institution trust account the $350 filing fee by collecting monthly payments from Walton's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Walton is transferred to another institution, the transferring institution shall forward a copy of this Order along with Walton's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge

Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Gordon is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Gordon may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin on February 4, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

8